IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                                                                          NO. 3:22-CR-32-2

OMAR VILLACORTA

**MEMORANDUM OPINION**

A federal jury convicted Omar Villacorta of one count of conspiracy to distribute methamphetamine and one count of possession with intent to distribute fentanyl. Villacorta moved for a new trial on both counts, and a judgment of acquittal on only the fentanyl count. Because there was sufficient trial evidence to support the jury verdict and because Villacorta has not shown he was prejudiced by any alleged errors, the Court denied both acquittal and a new trial. This memorandum opinion elaborates on the reasons underlying that decision.

**I**
**Procedural History**

On March 22, 2022, a federal grand jury returned a two-count Indictment against Omar Villacorta and Enrique Rivera. Doc. #1. Count One charged Villacorta and Rivera with one count of conspiracy to distribute in excess of fifty grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and Count Two charged them with aiding and abetting each other to possess with intent to distribute in excess of four hundred grams of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. *Id.* at 1, 3.

Rivera pled guilty to Count One on January 4, 2023, pursuant to a plea agreement with the government, and on May 17, 2023, this Court sentenced Rivera to 200 months of imprisonment followed by five years of supervised release. Docs. #72, #114, #116. Villacorta chose to proceed to trial. On June 27, 2023, following a four-day trial, a jury found Villacorta guilty on both counts

of the Indictment. Doc. #144.

On July 11, 2023, Villacorta filed a "Motion for Judgment of Acquittal or the Alternative a New Trial." Doc. #147. After the Court granted Villacorta's request for an extension to brief the motion,[1] Villacorta filed a memorandum brief in support of his motion on July 31, 2023, specifying that he seeks "a Judgment of Acquittal on Count 2 and a New Trial on Count 1 and Count 2," Doc. #156 at 9. The government responded in opposition to the motion on August 21, 2023, after being granted a requested extension. Docs. #151, #157. Villacorta did not reply.

## II
## Standards

### A. Federal Rule of Criminal Procedure 29(a)

Motions for acquittal are governed by Federal Rule of Criminal Procedure 29(a), which provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." "Evidence is sufficient to support a conviction so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gas Pipe, Inc.*, 997 F.3d 231, 240 (5th Cir. 2021) (internal quotation marks and citation omitted). In applying this standard, "the court views all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *Id.* (cleaned up).

### B. Federal Rule of Criminal Procedure 33(a)

Motions for new trials are governed by Federal Rule of Criminal Procedure 33(a). Under Rule 33(a), a "court may vacate any judgment and grant a new trial if the interest of justice so

---

[1] Doc. #151.

requires." "Broadly speaking, Rule 33 is exercised in two situations. One is when error infects the trial—perhaps the erroneous admission or exclusion of evidence, inflammatory comments by a lawyer, or faulty jury instructions. The other is when the court believes the evidence weighs heavily against the verdict." *United States v. Crittenden*, 46 F.4th 292, 296 (5th Cir. 2022) (internal quotation marks and citations omitted). "[A]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (citation omitted).

**III**
**Request for Acquittal on Count Two**

The jury found Villacorta guilty of aiding and abetting the possession with intent to distribute more than four hundred grams of fentanyl, as charged in Count Two of the Indictment. Doc. #144; *see* Doc. #1 at 3. In his motion, Villacorta submitted that "the Government offered inconsistent testimony regarding Count 2" to the extent "[i]t was unclear where law enforcement found the Fentanyl;"[2] and "the government failed to offer proof that [he] knew or should have known that the Fentanyl was hidden inside the truck."[3] Doc. #147 at 1. In his memorandum brief, Villacorta similarly argued that the government did not "present evidence that 1) [he] knew of the presence of fentanyl …, 2) [he] had ownership, dominion, or control over the fentanyl, and 3) Rivera conspired with [him] to possess fentanyl." Doc. #156 at 2. The government responded that it presented sufficient evidence for the jury to return a conviction for Count Two. Doc. #157

---

[2] According to Villacorta's motion, "Agent Bryant testified that the fentanyl was found inside the truck's cabin on the driver's side---after law enforcement moved the vehicle from its original location," and "[c]ontrary to [Bryant's] testimony, Agent Dassance testified that fentanyl was found hidden in a toolbox outside the truck." Doc. #147 at 1.

[3] In his motion, Villacorta's submits that "Agent Bryant also testified that he had no proof and could not prove that [he] knew fentanyl was inside the vehicle;" "Agent Dassance also testified that he spoke with only Enrique Rivera concerning the Fentanyl;" "[i]t was unrefuted at trial that neither defendant discussed nor negotiated to sell Fentanyl;" and the "government failed to offer any testimony concerning who placed the fentanyl in the toolbox outside the vehicle, whether the toolbox came from the truck, or whether Mr. Villacorta knew or should have known the fentanyl was present in the toolbox." *Id.* at 1, 2.

at 13.

To prove possession with intent to distribute fentanyl under 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt that the defendant had (1) knowledge of, (2), possession of, and (3) the "intent to distribute the controlled substances." *United States v. Moreno*, No. 21-50661, 2022 WL 4494113, at *1 (5th Cir. Sept. 27, 2022). Possession can be actual or constructive and "proved by direct or circumstantial evidence." *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1095 (5th Cir. 1991) (citation omitted). Constructive possession "may be shown by ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." *United States v. Richardson*, 848 F.2d 509, 512 (5th Cir. 1988) (citation and emphases omitted). "Ordinarily, knowledge of the existence of drugs may be inferred from control over the location in which they are found," *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999); but if "[t]he drugs are hidden in a compartment, [courts] normally require additional circumstantial evidence that raises suspicion or demonstrates guilty knowledge," *United States v. Aguilar-Alvarez*, 212 F. App'x 340, 342 (5th Cir. 2007). "Proof of intent to distribute may be inferred from the presence of distribution paraphernalia, large quantities of cash, or the value and quality of the substance." *United States v. Lyons*, No. 22-30409, 2023 WL 4532804, at *2 (5th Cir. July 13, 2023) (citing *United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992); *United States v. Anguiano*, 27 F.4th 1070, 1073 (5th Cir. 2022)).

The government presented sufficient evidence for a reasonable jury to find Villacorta guilty on Count Two which, viewing the evidence, inferences, and credibility of witnesses in the government's favor, established the following facts.

Special DEA Agent Michael Dassance—lead case agent in the case—received information

from an individual incarcerated in federal prison that a drug supplier would be bringing methamphetamine to Mississippi. Anthony Hudson—a confidential informant for the DEA—ordered up to 110 pounds of methamphetamine from a source of supply sometime in late October 2021. Through Hudson, it was arranged for one or more couriers to drive the methamphetamine in a semi-truck from California to a Love's Truck Stop in Batesville, Mississippi. On November 3, 2021, Dassance received a call from Hudson advising that, "they say the truck is going to be here tomorrow at Love's in Batesville." Doc. #153 at 160.

Hudson spoke by phone with both Villacorta and Rivera throughout the time that Villacorta and Rivera traveled in a semi-truck from California to Batesville, Mississippi. Villacorta and Rivera arrived at the Love's Truck Stop in Batesville in the semi-truck on November 4, 2021, at approximately 9:30 a.m. Agent Josh Bryant with the DEA's surveillance unit, who saw Villacorta and Rivera arrive, also saw Villacorta and Rivera conduct what appeared to be "[c]ounter surveillance" by driving "around 30 or 45 minutes looking for law enforcement." *Id.* at 56. Villacorta and Rivera then parked the semi-truck on the shoulder of the access road near the Love's Truck Stop.

When Hudson got to the Love's Truck Stop the morning of November 4, 2021, he called Rivera. By then, Rivera had left the semi-truck on the access road, with only Villacorta in it, to go inside the Love's Truck Stop. By phone, Rivera told Hudson that the person he was to meet with was in the semi-truck parked on the access road. As Hudson walked toward the semi-truck on the access road, Villacorta waved at him. Once Hudson reached the semi-truck, Villacorta did not ask Hudson who he was or why he was there; rather, Villacorta told Hudson to pull his car "around to the back of the cabin," which Hudson took to mean that Villacorta wanted him "to pull [his] car around so he could load up the drugs." Doc. #154 at 294. Villacorta asked Hudson about

5

another truck parked "over to the side," and Hudson told him, "That's a white girl in that truck there," to "throw[] him off" that DEA agents actually were in that truck. *Id*. at 295. Hudson then walked away from the semi-truck and did not speak with Villacorta further. Rivera returned to the semi-truck where he and Villacorta were arrested.

Agent Josh Bryant found three kilograms of fentanyl "[i]n a little cabinet area on the inside of the passenger compartment of the truck,"[4] conservatively worth $600,000. Doc. #153 at 34, 72; *see* Exs. G-14 to G-17 (photos of truck interior); Exs. G-18 to G-21(photos of fentanyl). The fentanyl was seized. Approximately forty-nine kilograms of methamphetamine discovered in the semi-truck was also seized.

Based on this evidence, the jury could reasonably conclude that Villacorta knew of and possessed or constructively possessed the fentanyl. While Villacorta testified that he drove across the country with Rivera for twenty or more hours on November 3, 2021, only to discuss issues in his marriage; he never saw the fentanyl in the cab of the car; he thought Hudson came over to the semi-truck to deliver a prostitute; and that he did not know there was a drug transaction occurring, it was up to the jury to believe or not believe Villacorta's testimony. *See United States v. Acosta-Guerrero*, 431 F. App'x 259, 261 (5th Cir. 2011) (jury can reasonably conclude that, if a vehicle contains high-value contraband, "a defendant would not have been entrusted with such extremely valuable cargo if he was not part of the drug trafficking scheme.") (cleaned up); *Aguilar-Alvarez*, 212 F. App'x at 342 ("[A] defendant offering implausible explanations for the situation is sufficient circumstantial evidence to support a conviction of knowingly possessing drugs."). It was also left to the jury to reconcile for itself any perceived inconsistent testimony about precisely where the fentanyl was found. More, testimony that three kilograms of fentanyl is conservatively

---

[4] Dassance and Tim Campbell—a narcotics officer on the case—corroborated that Bryant found the fentanyl in the compartment area behind the driver's seat.

worth $600,000 is sufficient to indicate an intent to distribute. *See United States v. Vinagre-Hernandez*, 925 F.3d 761, 765 (5th Cir. 2019) ("Intent to distribute may be inferred from a large quantity of illegal narcotics and the value and quality of the drugs.") (citation omitted).

As to intent to distribute, the evidence was also sufficient for a reasonable trier of fact to conclude that Villacorta had the intent to distribute fentanyl based on (1) Hudson's testimony regarding his phone call with both Villacorta and Rivera as they transported the narcotics from California to Mississippi; (2) Villacorta and Rivera arriving in the semi-truck at the location on the day coordinated with Hudson; (3) Villacorta being left alone in the semi-truck with the narcotics; and (4) the discovery of three kilograms of fentanyl in the cab of the semi-truck (along with methamphetamine) in which Villacorta had sat for twenty or more hours. Again, it was up to the jury whether to believe that Villacorta—despite his law enforcement training and presence in the semi-truck for 20 or more hours—did not know about the drugs and thought Hudson was delivering a prostitute—which it clearly did not.

Because the evidence was sufficient to support the jury's conviction of Villacorta as to Count Two, the motion for acquittal on Count Two was denied.

## IV
## Request for New Trial

Villacorta sought a new trial as to Counts One and Two based on the Court's denial of his proposed Defense Jury Instruction No. 1 regarding the definitions of "possession" and "knowingly," and based on his allegation of jury coercion. Doc. #156 at 5; Doc. #147 at 3.

### A. Jury Instruction No. 1

Villacorta argued that "the Court denied him fair deliberations, thus a fair trial, when [it] refused Defense Jury Instruction No. 1." Doc. #156 at 5 (emphasis omitted). Specifically, he contended that the Court did not adequately define "possession" or "knowingly" when it followed

7

the Fifth Circuit's Pattern Jury Instructions, which according to Villacorta, "permitted the Jury to find [him] automatically guilty of Count Two if they found him guilty of Count One since the Government failed to prove guilty knowledge as to count [sic] Count Two." *Id.* at 5, 6. Villacorta further submitted that "the Court's instruction failed to fully educate the Jury on the law concerning 'Single Defendant-Multiple Counts.'" *Id.* at 6. Pointing out that the Court instructed the jury based on the Fifth Circuit Pattern Jury Instructions for "possession" and "knowingly," and citing *United States v. Pennington*, 20 F.3d 593, 598 (5th Cir. 1994), Villacorta argued his proposed jury instruction was required because the drugs were not "clearly visible or readily accessible." Doc. #156 at 5.

The government responds that "[t]he district court did not abuse its discretion by refusing to include [Villacorta's] requested instruction" because "[t]he Fifth Circuit Pattern Jury Instruction that was given was substantively correct" and Villacorta's "requested instruction was not applicable to the case." Doc. #157 at 21.

"A district court has broad discretion in framing the instructions to the jury and [an appellate] [c]ourt will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law." *United States v. Valle*, 538 F.3d 341, 348 (5th Cir. 2008) (citation omitted). A district court abuses its discretion in failing to include a defendant's jury instruction "only if that instruction: (1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense." *United States v. Hagen*, 60 F.4th 932, 946 (5th Cir. 2023) (quoting *United States v. Simkanin*, 420 F.3d 397, 410 (5th Cir. 2005)). "Under this test, [the Fifth Circuit] will not find an abuse of discretion where the instructions actually given fairly and adequately cover the issues presented by the case." *Simkanin*,

8

420 F.3d at 410.

The Court used the Fifth Circuit's Pattern Jury Instructions to define both "possession" and "knowingly." Doc. #139 at 7–8. In defining "possession," the instruction given included both "actual possession," where "[a] person who knowingly has direct physical control over a thing," and "constructive possession," where "[a] person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons." *Id.* at 8; *see* Fifth Circuit Pattern Jury Instructions (Criminal Cases) 1.33 (2019). Immediately after defining "possession," the Court instructed the jury that "knowingly" "means that the act was done voluntarily and intentionally, not because of mistake or accident." Doc. #139 at 8; *see* Fifth Circuit Pattern Jury Instructions (Criminal Cases) 1.41 (2019).

Villacorta's proposed jury instruction stated:

> The government may not rely only upon Mr. Villacorta's ownership and control of the vehicle to prove he knew that he possessed a controlled substance. While these are factors you may consider, the prosecutor must prove there is other evidence indicating Mr. Villacorta's guilty knowledge of a controlled substance hidden in the vehicle.

Doc. #140 at PageID #355 (citing "Fifth Circuit Pattern Jury Instructions 1.33").

The Court's given instructions "correctly reflect the issues and law." *Valle*, 538 F.3d at 348. The Court did not abuse its discretion in refusing to give Villacorta's proposed jury instruction when its "instructions were clear and correct statements of the law that adequately and fairly covered the issues presented in the case." *United States v. Valdez-Lopez*, 444 F. App'x. 829, 833 (5th Cir. 2011) (internal quotation marks and citations omitted). When rejecting Villacorta's proposed instruction, the Court explained that (1) the Fifth Circuit Pattern Jury Instructions sufficiently address the issue of possession, and (2) because ownership does not affect a person's

9

ability to exercise dominion and control over an object, ownership did not need "to be factored" into the instructions for this case. Doc. #155 at 495; *see United States v. Richardson*, 676 F.3d 491, 507 (5th Cir. 2012) ("It is well-settled, however, that a district court does not err by giving a charge that tracks [the Fifth] Circuit's pattern jury instructions and that is a correct statement of the law.") (internal quotation marks and citation omitted). Unlike in *Pennington*, this Court gave instructions that "substantially cover[ed] the issue of constructive possession."[5] *See Pennington*, F.3d at 600 (reversing and remanding case because district court's "instruction did not substantially cover the issue of constructive possession.").

Additionally, rejecting Villacorta's proposed instruction did not impair Villacorta's presentation of his defense. *See Hagen*, 60 F.4th at 946 (district court abuses discretion by failing to give proposed jury instruction when such "seriously impairs the defendant's ability to present effectively a particular defense"). This Court did not abuse its discretion when rejecting Villacorta's instruction because, "taken together, the trial, charge, and closing argument laid the defendants' theory squarely before the jury." *United States v. Proctor*, 118 F. App'x 862, 863 (5th Cir. 2004) (per curiam) (unpublished) (cleaned up).

And regarding whether the jury was instructed properly on "Single Defendant-Multiple Counts," Villacorta's counsel addressed in her closing arguments that the jury had to analyze different facts and reach separate conclusions to find him guilty of the charges in Counts One and Two by highlighting the differences between the government's evidence proving Villacorta's knowledge, possession, and intent to distribute methamphetamine as to Count One and its evidence

---

[5] Even if there was some error in the Court refusing to give Defense Jury Instruction No. 1, because the government introduced substantial evidence of Villacorta's guilty knowledge, the error would be harmless. *See United States v. Diaz-Rivera*, 229 F. App'x 330, 331 (5th Cir. 2007) ("Because the Government introduced substantial evidence showing [the defendant's] guilty knowledge, … any error … in refusing to instruct the jury that it could not find that [the defendant] knew of the drugs based on his control of the vehicle alone was harmless.").

of the same for fentanyl as to Count Two. Doc. #155 at 554–55, 558–59; *see Simkanin*, 420 F.3d at 411 ("[T]he lack of the requested instruction did not seriously impair Simkanin's ability to present effectively his … defense.").

For these reasons, Villacorta failed to demonstrate that the Court's rejection of his proposed jury instruction led to "adverse effects on [his] substantial rights" such that it warrants a new trial. *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (citation omitted). Villacorta's motion for a new trial based on the Court's rejection of his proposed Defense Instruction No. 1 was without merit.

### B. Alleged Jury Coercion

In seeking a new trial, Villacorta asserted that "the Jury reached its verdict due to coercion." Doc. #156 at 7. Villacorta argued such was the result of:

> 1) ordering the Jury to continue deliberating on three separate occasions over three days, … 2) sending the jurors home each time they announced their inability to reach a verdict, 3) the Jury's constant travel back to the courthouse … after failing to reach a unanimous verdict, 4) their knowledge that the Court knew their voting split, 5) their strong averment that they were hopelessly deadlocked, 6) the lack of evidence on Count 2 of the Indictment and them still returning a guilty verdict, and 7) giving the formal modified *Allen* charge over counsel objections and after all the above[.]

*Id.* at 8–9. Villacorta also argued that "the most glaring sign of coercion is that the Jury returned a guilty verdict approximately two hours but not more than four hours after the charge." *Id.* at 9. The government responded that "[n]othing in this record suggests that the jury was unconstitutionally coerced into reaching a verdict or that the charge in its full context rendered [Villacorta's] trial fundamentally unfair." Doc. #157 at 25.

"A judge may encourage jurors who are having difficulty reaching a verdict to deliberate longer, and to give due consideration and respect to the views of their peers" without it amounting to coercion. *United States v. Straach*, 987 F.2d 232, 242 (5th Cir. 1993) (citing *Allen v. United*

*States*, 164 U.S. 492 (1896)). The "real question is whether the jury was required to deliberate an unreasonable length of time or for unreasonable intervals or was threatened with the prospect of such unreasonably lengthy deliberations." *United States v. Kimmel*, 777 F.2d 290, 295 n.5 (5th Cir. 1985). The decision to ask a jury to continue deliberating is within the district court's discretion. *Straach*, 987 F.2d at 242.

An *Allen* charge "refers to the case *Allen v. United States*. … The term is used generally in reference to supplemental instructions urging a jury to forego their differences and come to a unanimous decision." *United States v. Eghobor*, 812 F.3d 352, 357 n.2 (5th Cir. 2015) (cleaned up). A district court has "broad discretion to determine whether an *Allen* charge might coerce a jury." *United States v. Heath*, 970 F.2d 1397, 1406 (5th Cir. 1992).

Here, the jury began its deliberations on Friday, June 23, 2023, at 1:40 p.m. Doc. #135. At approximately 2:34 p.m. that day, the Court received Jury Note #1, consisting of two questions, and after consulting with the attorneys, the Court orally answered the questions at approximately 3:03 p.m., and the jury returned to deliberations. Doc. #143 at PageID 375.[6] At approximately 4:56 p.m. that day, the jury announced that it was hung. The Court instructed the jury to return to the jury room while it consulted with the attorneys. While speaking with the attorneys, the Court received Jury Note #2 from the jury, advising that a juror needed to take his medicine. Doc. #143 at PageID 376. Following further consultation with the attorneys, the Court called the jury into the courtroom and excused them for the day with instructions to return Monday, June 26, to continue deliberations.

The jury resumed deliberations on June 26 at 9:00 a.m. Doc. #135. That afternoon, after receiving Jury Note #3 which indicated the jury still could not reach a verdict, Doc. #143 at PageID

---

[6] During the process of jury deliberations, Jury Note #1 was misplaced. Doc. #143 at PageID 375.

12

377, the Court excused the jury at approximately 3:00 p.m. and instructed them to return the next day to continue deliberations. Before the jury resumed deliberations on June 27 at approximately 9:18 a.m., the Court gave a modified *Allen* charge to the jury. At 1:13 p.m., the jury returned a guilty verdict on Counts 1 and 2. Docs. #135, #144.

"It is not only permissible but proper for" the Court "to ask a jury to continue deliberating if it appears that further deliberation might be fruitful in helping the jury reach a unanimous verdict." *Coleman v. Quarterman*, 456 F.3d 537, 548 (5th Cir. 2006). This Court did not abuse its discretion or unduly coerce the jury by instructing it to continue deliberations, despite learning it was hung on June 23 and June 26, or by issuing a modified *Allen* charge the third day of deliberations. *See United States v. Montalvo*, 495 F. App'x 391, 392 (5th Cir. 2012) (upholding district court's exercise of discretion to charge jury to continue deliberating after receiving two indications they were hung, and affirming use of *Allen* charge after third indication jury was hung following three days of deliberations).[7]

More, the Fifth Circuit "has consistently held that the trial court is vested with broad discretion to evaluate whether an *Allen* charge is likely to coerce a jury into returning a verdict it would not otherwise return." *United States v. Allard*, 464 F.3d 529, 536 (5th Cir. 2006) (internal quotation marks and citation omitted). Though Villacorta argued that the Court issued *de facto Allen* charges when it asked the jury to continue deliberations, the Court did not instruct the jury "to forego their differences and come to a unanimous decision" before it issued the formal *Allen* charge. *See Eghobor*, 812 F.3d at 357 n.2 (*Allen* charge generally refers to "supplemental instructions urging a jury to forego their differences and come to a unanimous decision."). And

---

[7] Villacorta believed a jury note "included the jury split" or "vote split." Doc. #147 at 2, 3. However, any unsolicited disclosure of such "is not by itself a ground for a mistrial." *Coleman*, 456 F.3d at 548 (quoting *United States v. Warren*, 594 F.2d 1046, 1049 n.3 (5th Cir. 1979)).

13

when the Court did issue a formal *Allen* charge, it was virtually identical to that in the Fifth Circuit Pattern Jury Instructions, did not instruct the jury it had to reach a verdict, and did not give the jury a deadline to reach its decision.[8] *See Allard*, 464 F.3d at 535–36 ("Modified Allen charges are permissible, within the district court's broad discretion, where the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial.") (cleaned up); *see also Eghobor*, 812 F.3d at 364 ("The relevant inquiry on appeal is whether: (1) any semantic deviation from approved Allen-charge language was so prejudicial that it requires reversal; and (2) the circumstances surrounding the use of the charge were coercive.") (citation omitted).

Finally, Villacorta's argument that the jury returned a verdict "not more than four hours" after the *Allen* charge, Doc. #156 at 9, fails because four hours is "not an unduly short amount of time" such that it indicates coercion. *See United States v. Andaverde-Tiñoco*, 741 F.3d 509, 517–18 (5th Cir. 2013) (jury deliberations "about two-and-a-half hours after receiving the charge" not unduly short).

In short, Villacorta failed to show the jury's deliberations were conducted in a coercive manner and thus failed to demonstrate any "effects on [his] substantial rights" or that there was a "miscarriage of justice." *Wright*, 634 F.3d at 775 (internal quotation marks and citations omitted). Accordingly, Villacorta's argument for a new trial based on alleged jury coercion is without merit.

**V**
**Conclusion**

For the reasons above, Villacorta's "Motion for Judgment of Acquittal or the Alternative a New Trial," Doc. #147, was **DENIED**.

---

[8] Villacorta did not argue that the language in the *Allen* charge was coercive and he "concede[d] that this Court gave one formal modified *Allen* charge." Doc. #156 at 8.

This the 12th day of August, 2024.

                                                      **/s/Debra M. Brown**
                                                      **UNITED STATES DISTRICT JUDGE**