IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                                                                  NO. 3:22-CR-32-2

OMAR VILLACORTA

**MEMORANDUM OPINION**

Omar Villacorta moved for leave to file late objections to the presentence report and a late sentencing memorandum as well as submit his list of sentencing witnesses. Because Villacorta timely submitted his list of sentencing witnesses but failed to establish the factual premise for the remainder of the relief sought, the Court denied the motions on June 26, 2024. This memorandum opinion elaborates on the reasons underlying the rulings.

**I
Relevant Background and Procedural History**

On March 22, 2022, a federal grand jury returned a two-count Indictment against Omar Villacorta and Enrique Rivera. Doc. #1. Count One charged them with conspiracy to distribute in excess of fifty grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and Count Two charged them with aiding and abetting each other to possess with intent to distribute in excess of four hundred grams of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. *Id.* at 1, 3.

Rivera pled guilty to Count One on January 4, 2023, pursuant to a plea agreement with the government, and on May 17, 2023, this Court sentenced Rivera to 200 months of imprisonment and five years of supervised release. Docs. #72, #114, #116. Villacorta chose to proceed to trial. On June 27, 2023, following a four-day trial, a jury found Villacorta guilty on both counts of the

Indictment.[1]  Doc. #144.

On February 19, 2024, when his sentencing hearing was then set for February 21, 2024,[2] Villacorta filed a "Motion to Continue Sentencing and All Deadlines." Doc. #164. As cause, Villacorta represented:

> The Co-Defendant in this case is Enrique Rivera. He did not testify at trial.
>
> According to Mr. Rivera, he attempted to contact counsel to speak on [his] behalf.
>
> He contacted counsel concerning [his] trial and sentencing.
>
> After formally coordinating a meeting with Mr. Rivera through the Federal Bureau of Prisons, [his] Counsel briefly spoke with him for the first time after trial.
>
> Mr. Rivera informed [his] counsel that he would write a letter for this court to consider the facts of this case. [His] Counsel provided her address for him to mail it.
>
> Mr. Rivera said he would send the letter on January 21, 2024.
>
> [His] Counsel contacted Mr. Rivera the week after the ice storm on January 27, 2024, for an update on the letter. He informed counsel that he had already mailed it.
>
> [His] Counsel has finally received the letter.
>
> The information in the letter sheds light on the information counsel and [he] were not privy to prior to receiving this letter, which is necessary in considering sentencing. See *Brady vs. Maryland*, 373 U.S. 83, 87 (1963); *East v. Scott*, 55 F.3d 996, 1002-04 (5th Cir. 1995) (discussing a claimed Brady violation during the sentencing phase).
>
> [His] Counsel asks this court to continue sentencing and reopen the deadlines for the PSR so that she can dispute the fentanyl counts and obstruction of justice.

---

[1] On July 11, 2023, Villacorta filed a post-trial motion for an acquittal as to the fentanyl count and a new trial as to both counts, Doc. #147; and on July 31, 2023, filed a memorandum in support of the post-trial motion, Doc. #156. The government responded to the post-trial motion on August 21, 2023. Doc. #157.

[2] The Court initially set sentencing for November 1, 2023. Doc. #146. On October 23, 2023, based on Villacorta's motion, the Court continued sentencing to January 31, 2024. Docs. #159, #160. On January 24, 2023, the Court reset sentencing for February 21, 2024, on its own. Doc. #163. On February 20, 2024, based on a request by Villacorta the day before (when he moved to file late objections to the presentence report), the Court reset sentencing for May 1, 2024. Doc. #166. Following a May 1, 2024, evidentiary hearing on the motions discussed in this opinion, the Court reset the sentencing hearing for May 29, 2024. Docs. #179, #180. On the government's motion, the Court continued the sentencing hearing to June 26, 2024. Doc. #182.

> After speaking with [his counsel] concerning the information received from Mr. Rivera, he begs this court to continue his sentencing hearing and reopen his deadlines so that counsel can be able to meet her burden of proof at sentencing to object to the PSR based on the new information Mr. Rivera disclosed.
>
> Further, based on information and belief, Mr. Rivera's letter raises grave issues concerning the information and evidence [he] did not receive prior to trial that only Mr. Rivera and the Government knew.
>
> …
>
> [His] Counsel also intends to coordinate another meeting with Mr. Rivera, if this court allows the continuance, concerning the letter so that counsel can take the necessary recourse to have his appearance during sentencing via Zoom.
>
> … [He] contends that the ends of justice require a continuance of his sentencing hearing to provide critical witnesses and mitigation evidence that was unavailable before his sentencing deadlines.

*Id.* at 1–2 (paragraph numbering omitted).[3] By order issued February 20, 2024, the Court granted Villacorta's request to continue the sentencing hearing but deferred a ruling on his request to reopen the sentencing deadlines to allow the opportunity for "the government's response and input." Doc. #165 at 2. However, the Court noted that to the extent Villacorta intended to rely on the documents his counsel sent to the Court by e-mail on February 19 described as an exhibit to the motion,[4]

> [Villacorta] and his counsel must determine whether they should be filed under seal or with restricted access—if so, Villacorta must formally seek to have them filed as such and if not, Villacorta must file them. Otherwise, the Court will not consider the documents since they are not filed on the record in this case.

*Id.* at 2 n.1.

The government responded in opposition to the motion on February 29, 2024, that (1) "on

---

[3] Villacorta also represented that his "Counsel has not ascertained whether [the government] will object to this request." Doc. #164 at 3.

[4] As the Court then observed, "no exhibit to the motion is expressly referenced in the motion" and "[t]he document appears to be a letter handwritten in Spanish from Rivera [and] [t]he envelope in which the letter was presumably enclosed … is addressed to Villacorta's counsel." Doc. #165 at 2 n.1.

3

Monday, February 26, 2024, [it] received a *translated* copy of the Rivera Letter from Rivera's Attorney," attached as an exhibit,[5] but "has yet to see a copy of the Rivera Letter, which was written in Spanish;" (2) "Rivera's counsel, Joe Morgan Wilson informed [it] that he was not aware of Rivera's contact with Villacorta's defense counsel," as shown by Wilson's affidavit attached as an exhibit;[6] (3) Wilson's affidavit and the affidavit of DEA Special Agent Michael Dassance attached as an exhibit[7] "call into question the legitimacy of the Rivera Letter" because "the assertions made by Rivera are significantly discredited;" and (4) it "did not fail to disclose favorable evidence to Villacorta [because] relevant portions of the Rivera Letter were simply not made known to the government prior to trial" so "the Rivera Letter raises no Brady issues."[8] Doc. #167 at 2, 3, 4–5 (emphases in original). Regarding the assertions in the purported letter, the government submitted that each assertion either was negated by the Wilson affidavit[9] and/or the Dassance Affidavit; and/or was not known to the government prior to trial.[10] *Id.* at 5–9, 13.

---

[5] Doc. #167-1.

[6] Doc. #167-2.

[7] Doc. #167-3.

[8] The government did confess a Jencks violation based on its failure to produce to Villacorta the December 2, 2022, Proffer Report and a December 28, 2022, one-page Intelligence Report which "references the [November 30, 2022] Rivera proffer." Doc. #167 at 13–17. The government submitted that its Jencks violation constitutes harmless error since Rivera did not testify at trial, "Dassance's trial testimony never referenced Rivera's statements to the government," and "[t]he Proffer Report did not contain any exculpatory information, only inculpatory information." *Id.* at 15–17. By not filing a reply in support of his February 19 motion, Villacorta did not challenge the government's harmless error conclusion. *See United States v. Reyes*, 734 F. App'x 944, 948 (5th Cir. 2018) (defendant's failure to file reply brief addressing contention in government's response meant defendant did not dispute such contention). Because Villacorta did not dispute the government's harmless error conclusion, the Court saw no reason to address the matter further, particularly since Villacorta, not the Court, was privy to all the discovery produced by the government.

[9] The Court has concerns regarding Rivera's attorney's disclosure of his communications with Rivera, or lack of communications with Rivera on certain subjects, to the extent such is subject to the attorney-client privilege, particularly since Rivera's attorney re-noticed an appearance as Rivera's counsel in this case on April 3, 2024. Doc. #171. Only Rivera, not his attorney, can waive the attorney-client privilege. *See United States v. Bolton*, 908 F.3d 75, 100 (5th Cir. 2018) ("a *client* waives the [attorney-client] privilege").

[10] Specifically, the government argued that (1) "Rivera never stated that Omar Villacorta was not responsible for the offenses for which he was charged [and Rivera's counsel] confirms that he never instructed Rivera not to testify in the Villacorta trial;" (2) "Agent Dassance does not recall Enrique Rivera ever telling him that Villacorta was a person who earned Rivera's trust for his honesty and work;" (3) "It was only after Rivera was sentenced and moved to a

4

Four days later on March 4, 2024, the government filed a notice of correction stating that while "[i]n its response, [it] stated that it had not received a copy of the Rivera Letter from defense counsel," it "was mistaken [and] had received a copy of the original Rivera Letter (in Spanish) from defense counsel via email."[11]  Doc. #169 at 1–2.

Villacorta did not reply to the arguments and evidence presented in the government's response.  But on April 15, 2024, nearly a month and a half after the government filed its response, Villacorta filed a motion "request[ing] that he be given the opportunity to file his [sentencing memorandum and] objections … out of time."[12]  Doc. #172 at 2.  Similar to the reasons stated in his February 19 motion, Villacorta represented as cause for the relief sought:

> On February 19, 2024, [he] filed Defendant's Motion to Continue Sentencing and All Deadlines based on an affidavit submitted by Rivera which raised issues which are relevant to [his] sentencing. Specifically, [Rivera] stated that [he] did not have anything to do with the drug transaction Rivera pled guilty to, and that [Rivera] had informed the Government [of] this information before trial.
>
> …
>
> Because of the need to further investigate, based on Rivera's affidavit and the [government]'s response, [his] Counsel has not been able to file [his] sentencing memorandum or objections timely.
>
> …

---

prison in Lompoc, California, that he attempted to exonerate Villacorta;" (4) "Rivera never told Agent Dassance that Villacorta was with him because Villacorta 'wanted a few days to meditate and calm down' due to differences with his wife;" (5) "Rivera never informed Agent Dassance that he 'asked [Villacorta] to tell the person whom I was waiting for to park in front of the truck for a delivery that I was bringing to them;'" (6) "The prosecution never told Rivera not to testify;" (7) "The defense was … aware that Rivera believe[d] that the seized fentanyl was cocaine. … However, to prove the substantive offense of possession of intent to distribute under 21 U.S.C. § 841(a)(1), the government must only establish that the defendant knowingly or intentionally possessed a ***controlled substance*** and intended to distribute it. … Defendants need not know what ***type of drug*** or what quantity of drug was involved in the offense as long as they knew they were dealing with a controlled substance;" and (8) "Rivera never informed the government that Mr. Villacorta was not involved in the offenses for which he was charged. Rivera's defense counsel never informed the government that Villacorta was not involved in the offenses for which he was charged. The government did not reference Rivera's statement at trial."  Doc. #167 at 5–6, 8–9, 13 (emphases in original).

[11] The government did not specify in the notice when it received a copy of the letter.

[12] Villacorta also asked in the motion that he be allowed to "file his … witness list out of time."  Doc. #172 at 2.  The deadline to advise the Court of witnesses intended to be called at the sentencing hearing had not expired relative to the then May 1 sentencing hearing date.  *See* Docs. #145, #166.

> [His] Counsel believes that there are objections that should be raised based on her reading of the new rules and from information obtained from Co-Defendant Rivera.

*Id.* at 1, 2. The government did not respond to the April 15 motion.

The Court held an evidentiary hearing on the motions on May 1, 2024, pursuant to notice. Docs. #177, #179. At the hearing, Villacorta called Rivera as a witness but Rivera refused to testify—Rivera did not even enter the courtroom. Villacorta called no other witnesses. Ultimately, no evidence on the motions was presented;[13] however, the Court allowed the parties to present oral arguments on the motions. On June 26, 2024, the Court denied the deferred portion of Villacorta's February 19 motion, Doc. #184, and denied in full Villacorta's April 15 motion, Doc. #185.[14]

## II
## Discussion

Together, Villacorta's February 19 motion and April 15 motion requested permission for Villacorta to file objections to the presentence report and a sentencing memorandum, and to submit his list of sentencing witnesses.

### A. Sentencing Witnesses

As specified in the Court's "Order Setting Sentencing" entered July 7, 2023, "[a]ny party intending to have one or more witnesses testify at the sentencing hearing shall give notice to the Court no less than ten (10) days before the sentencing hearing." Doc. #145 at PageID 380. So the deadline for advising the Court of witnesses intended to be called at the sentencing hearing is determined by the date of the sentencing hearing. The June 26 sentencing date established a June 16 deadline to give notice of sentencing witnesses. So at the time Villacorta filed both his February

---

[13] The government indicated it would present evidence relevant to Villacorta's suggestion of a Brady violation and Jencks violation but after its counsel advised the Court it would be duplicating the evidence it already put in the record through its written submissions, the Court saw no need reason to allow the same evidence to be presented again.

[14] Also that day, the Court denied Villacorta's post-trial motion. Doc. #184.

19 motion and his April 15 motion (when the sentencing hearing was then set for May 1), he did not need to obtain the Court's permission to submit his witness list. Since Villacorta timely advised the Court of his sentencing witnesses by e-mail on April 20, his request to be allowed to submit his witness list was moot.[15]

### B. Objections to Presentence Report

Villacorta's request to file objections to the presentence report was based on his representations about the purported letter his counsel says she received from Rivera. In his February 19 motion, Villacorta argued he should be permitted to file objections so he "can dispute the fentanyl counts and obstruction of justice" "based on the new information Mr. Rivera disclosed," Doc. #164 at 2; and in his April 15 motion, he argued he should be permitted to file objections "based on [his counsel's] reading of the new rules," Doc. #172 at 2. At the May 1 evidentiary hearing, Villacorta argued that the letter from Rivera was pertinent to sentencing because without it, he was "not able to properly vet whether or not he in fact obstructed justice," apparently referring to the obstruction of justice enhancement included in the calculation of his base offense level. There are numerous reasons why Villacorta's request to file objections was denied.

First, despite the Court advising Villacorta on February 20 that it would not consider the letter unless he filed the letter (and the envelope it came in) on the record in this case—whether or not filed under seal or with restricted access—Villacorta did not do so. That the government put a translated version of the letter in the record does not cure Villacorta's inaction in that respect

---

[15] Two days before the June 26 sentencing hearing, Villacorta submitted an updated witness list to the Court by e-mail which included two new witnesses. Because notice of the new witnesses was untimely, such witnesses were not permitted at the June 26 sentencing hearing.

when it was Villacorta, not the government, who sought relief based on the letter.[16]

Second, based on Villacorta's description of the purported letter's contents, the letter's contents seemed to be rank hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). Contrary to Villacorta's representation in his April 15 motion, *see* Doc. #172 at 1, the purported letter is not an affidavit and was not made under oath or penalty of perjury. Villacorta never argued that the letter's contents were not hearsay or that the letter was excepted from the hearsay rule, even when he learned at the May 1 evidentiary hearing that Rivera would not testify. While testimony by Rivera at the evidentiary hearing could have addressed or eliminated the letter's hearsay status (and indisputably authenticated the purported letter), Rivera declined to appear as a witness at the hearing. It was more than significant to the Court that the very person Villacorta said authored the purported letter refused the opportunity to not only confirm he wrote the letter but also back up its contents with sworn testimony.

Third, Villacorta noticeably omitted certain details about the circumstances surrounding his counsel's receipt of the purported letter and sometimes failed to elaborate on certain arguments he made. Among other things, Villacorta did not indicate in his February 19 motion when Rivera attempted to contact his counsel concerning his trial and sentencing, when his counsel first spoke with Rivera after the trial, and when his counsel "finally received the letter." Nor did Villacorta identify the "new rules" which he said gave rise to his argument that "there are objections that should be raised." Without this precise information to assist the Court in determining whether Villacorta demonstrated sufficient cause for the relief he sought, the Court was not inclined to

---

[16] Without more, the Court questioned the propriety of Villacorta's counsel's communications with Rivera regarding the letter to the extent Rivera was then represented by counsel. *See* Miss. R. Prof. Conduct 4.2.

8

grant such relief.

Fourth, while Villacorta described the letter as "necessary" to sentencing,[17] it seemed that, based on his own motions, he intended to offer the letter to contradict the jury's factual findings. *See, e.g.*, Doc. #164 at 2 (stating that in view of the letter, Villacorta seeks to "dispute the fentanyl counts"); Doc. #172 at 1 (stating Rivera said Villacorta "did not have anything to do with the drug transaction").[18] The Court would not permit Villacorta to attack at his sentencing hearing the jury's factual findings in such manner. *See Williams v. Stephens*, 575 F. App'x 380, 389 (5th Cir. 2014) (affirming district court's ruling that defendant was not entitled to present new evidence— the statement of an accomplice— regarding his innocence at the sentencing phase because that question "was already litigated during the guilt-innocence phase"); *Holland v. Anderson*, 583 F.3d 267, 280 (5th Cir. 2009) (trial court allowed to prohibit defendant from introducing evidence to contest his conviction during the penalty phase); *see also Oregon v. Guzek*, 546 U.S. 517, 526–27 (2006) (defendant had no right at resentencing to present alibi evidence not presented during trial and inconsistent with his conviction because "[s]entencing traditionally concerns *how*, not *whether*, a defendant committed the crime") (emphases in original).

---

[17] Villacorta's motion stated:

> The information in the letter sheds light on the information [his] counsel and [he] were not privy to prior to receiving this letter, which is necessary in considering sentencing. See *Brady vs. Maryland*, 373 U.S. 83, 87 (1963); *East v. Scott*, 55 F.3d 996, 1002-04 (5th Cir. 1995) (discussing a claimed Brady violation during the sentencing phase).

Doc. #164 at 2–3. The *East* case Villacorta cited concerns the appeal of a district court's dismissal of a 28 U.S.C. § 2254 habeas corpus petition and describes a potential *Brady* violation where the government did not disclose a sentencing witness' mental illness before the defendant's sentencing hearing. 55 F.3d 996 at 1003. The Court did not see how this case supported Villacorta calling Rivera as a witness or arguing a *Brady* violation as an objection to the presentence report.

[18] Based on the translated copy of the purported letter the government attached to its response to the February 19 motion, that is precisely what the letter's contents addressed. *See, e.g.*, Doc. #167 at 4 (quoting letter's statement that Rivera "was the one who hid the things in the trees"); *id.* (quoting letter's statement that Rivera "let officer 'Desantis' … know that [Villacorta] had nothing to do with what I had in the truck"); *id.* at 7 (quoting letter's statement that Rivera "asked [Villacorta] to tell the person whom I was waiting for to park in front of the truck for a delivery that I was bringing to them").

9

Fifth, it was not clear to the Court that the information in the purported letter was not available before trial or that Villacorta was not aware of the information before trial, to the extent Villacorta implied the government committed a *Brady* violation. *See* Doc. #164 at 2 (Villacorta's contention that "the letter sheds light on the information [his] counsel and [him] were not privy to prior to receiving this letter, which is necessary in considering sentencing. See *Brady vs. Maryland*, 373 U.S. 83, 87 (1963)"). According to Villacorta, Rivera's purported letter was prepared after his trial, Doc. #164 at 1, so it could not have been produced by the government in discovery. To the extent the purported letter contains statements about matters that occurred before trial, Villacorta offered no evidence to rebut the evidence the government attached to its response to the February 19 motion or the arguments in the government's response.[19] And Villacorta did not make the Court aware of any obstacle to him or his counsel communicating with Rivera before his trial or from calling Rivera as a trial witness.

Sixth, Villacorta never articulated what specific objections he would raise or what specific paragraphs of the presentence report would be implicated.

For all these reasons, the Court concluded that Villacorta's request to file objections to the

---

[19] Besides, *Brady* held that it is a violation of a defendant's due process rights if the government suppresses "'evidence favorable' to the accused … where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963) (quoting *Pyle v. Kansas*, 195 F.2d 815, 820 (3d Cir. 1952)). To prove a *Brady* violation, a defendant "must establish that '(1) the prosecution did not disclose the evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material,' meaning that 'there is a reasonable probability that if the government had disclosed the evidence, the result of the proceeding would have been different.'" *United States v. Sepulveda*, 64 F.4th 700, 706 (5th Cir. 2023) (quoting *United States v. Fernandez*, 559 F.3d 303, 319 (5th Cir. 2009)). Villacorta did not provide evidence or authority establishing the government's violation of any of these three elements. More, while *Brady* discussed whether, on the specific facts of its case, due process required a new trial or a new sentencing based on the prosecution's suppression of evidence, the discussion concerned whether the nature of the suppressed evidence impacted the guilt phase or the sentencing phase. 373 U.S. at 87. Because the purported letter here appeared to be offered to refute Villacorta's guilt rather than mitigation for purposes of sentencing, it seemed inappropriate to analyze the letter in the context of Villacorta's sentencing. It is clear a new trial is the remedy for a *Brady* violation where the suppression of evidence may have materially changed the outcome of the trial. *See United States v. Swenson*, 894 F.3d 667, 677 (5th Cir. 2018) ("the usual remedy" for a *Brady* violation "is a new trial"). It does not appear that the Fifth Circuit has reviewed a *Brady* violation claim asserted as an objection to a presentence report.

presentence report would be denied.

### C. Sentencing Memorandum

Villacorta's request to file a sentencing memorandum appeared to be premised on the same reasons as his request to file objections to the presentence report, at least in part. So for the same reasons the Court denied Villacorta's request to file objections, the Court denied Villacorta's request to file a sentencing memorandum.

## III
## Conclusion

For the reasons explained above, Villacorta's February 19 motion, Doc. #164, and his April 15 motion, Doc. #172, were denied, Doc. #185.

This 12th day of August, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**